# UNITED STATES DISTRICT COURT
for the
Southern District of Texas – Houston Division

| | |
|---|---|
| JULIANA RIVERA, Individually and as Representative of the ESTATE of EREN RIVERA, Deceased, *Plaintiffs,* | )<br>)<br>)<br>)<br>)<br>) |
| **-v-** | )<br>) Case No._____<br>) |
| KLEIN INDEPENDENT SCHOOL DISTRICT; EPPS ISLAND ELEMENTARY SCHOOL; DR. JENNY MCGOWN, in her official capacity; JOHN/JANE DOE SCHOOL EMPLOYEES 1–10, *Defendants.* | ) Hon. _____<br>)<br>) **CIVIL COMPLAINT AND JURY**<br>) **DEMAND**<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

Plaintiff JULIANA RIVERA, Individually and as Representative of the Estate of her minor son, EREN RIVERA, brings this action and alleges:

### I.   INTRODUCTION AND SUMMARY OF CASE

1. This action arises from the preventable and profoundly tragic death of seven-year-old Eren Rivera, who suffered a fatal choking episode during a school-supervised lunch period at Epps Island Elementary School on February 24, 2025. While in the exclusive custody and care of Klein Independent School District ("Klein ISD") personnel, Eren exhibited unmistakable signs of airway obstruction and medical distress.

2. Despite these clear and escalating indicators of a life-threatening emergency, school staff failed to take the most basic and universally recognized life-saving measures. Staff did not

promptly identify the choking emergency, did not administer the Heimlich maneuver, did not initiate CPR in a timely manner, and unreasonably delayed activating emergency medical services. By the time paramedics arrived, Eren had no pulse and could not be revived.

3.      These failures were not isolated mistakes by individual employees but the foreseeable result of systemic deficiencies within Klein ISD, including inadequate staff training, insufficient supervision during student meal periods, and the absence or non-enforcement of effective emergency response protocols. As a direct and proximate result of these institutional failures, Eren's constitutional rights were violated, and actionable negligence occurred under Texas law, culminating in the needless loss of a child's life.

## II.    JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5.      The Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Harris County, Texas, which lies within the Southern District of Texas.

## III.    PARTIES

7.      At all times relevant, Plaintiff JULIANA RIVERA was and is a resident of Harris County, Texas, and is the mother and duly appointed personal representative of the ESTATE OF EREN RIVERA, pursuant to Texas law. Ms. Rivera is a citizen of Texas, over the age of eighteen, and brings this action individually and on behalf of the Estate.

8.      At all times relevant, Defendant KLEIN INDEPENDENT SCHOOL DISTRICT

("Klein ISD") was and is a public school district organized under the laws of the State of Texas. Klein ISD may be served through its Superintendent, Dr. Jenny McGown, at 7200 Spring Cypress Road, Klein, Texas 77379.

9.   At all times relevant, Defendant EPPS ISLAND ELEMENTARY SCHOOL was and is a public-school campus within Klein ISD, operating under the authority of the District and the State of Texas. It may be served through its Principal, Constance Hawkins, at 7403 Smiling Wood Lane, Houston, Texas 77086.

10.   At all times relevant, Defendant DR. JENNY MCGOWN was and is the Superintendent of Klein ISD and is sued in her official capacity. She is an adult resident of Texas and may be served at Klein ISD's central administrative offices located at 7200 Spring Cypress Road, Klein, Texas 77379.

11.   At all times relevant, Defendants JOHN/JANE DOE EMPLOYEES 1–10 were employees, agents, or representatives of Klein ISD and/or Epps Island Elementary School whose identities are currently unknown. These individuals participated in, contributed to, or were responsible for the acts and omissions described in this Complaint.

12.   At all times relevant, each Defendant acted under color of state law, exercising authority derived from their official positions within Klein ISD. Their actions and omissions were taken pursuant to state authority and directly impacted the constitutional rights of Eren Rivera and his mother, Juliana Rivera.

13.   The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## IV.   FACTUAL BACKGROUND

3

14.     On February 24, 2025, seven-year-old Eren Rivera was a first-grade student at Epps Island Elementary School, a campus of Klein Independent School District. During the lunch period, Eren was under the exclusive custody, care, and supervision of school personnel, as required by Texas law and Klein ISD policy. At no time was his mother present or able to intervene.

15.     During a school-supervised, food-related activity in the cafeteria, Eren began choking. He exhibited clear, observable, and escalating signs of airway obstruction, including inability to breathe, visible panic, clutching at his throat, and physical indications of respiratory distress that would have been immediately recognizable to any reasonably trained school employee.

16.     Despite these unmistakable symptoms, no staff member promptly identified the choking emergency, and no staff member administered the Heimlich maneuver, abdominal thrusts, back blows, or any other basic life-saving intervention required under widely accepted emergency response standards for choking children.

17.     Instead of responding with urgency, school personnel failed to remove Eren from danger, failed to initiate CPR in a timely manner, and delayed activating emergency medical services, allowing Eren's condition to deteriorate rapidly. These delays occurred during a critical window in which prompt intervention would have prevented anoxic injury and death.

18.     When EMS personnel finally arrived on scene, Eren was pulseless, unresponsive, and without spontaneous respiration. Paramedics confirmed that he had no heartbeat upon their arrival. Despite aggressive resuscitation efforts, Eren was transported to the hospital and was pronounced dead shortly thereafter.

19.     Klein ISD subsequently issued a public communication acknowledging that a "medical emergency during lunch" had occurred and that the campus was placed in a HOLD status

from 12:10 p.m. to 12:40 p.m., reflecting a significant disruption consistent with a severe medical crisis and delayed emergency response.

20.    The failures leading to Eren's death were not isolated mistakes by individual employees but were the foreseeable result of systemic deficiencies within Klein ISD, including but not limited to:

a.    Inadequate training of cafeteria staff, teachers, aides, and administrators in choking recognition, the Heimlich maneuver, CPR, and emergency medical protocols;

b.    Insufficient supervision during student meal periods, including inadequate staff-to-student ratios and lack of trained personnel in the cafeteria; c.

c.    Failure to implement or enforce emergency response procedures, including timely EMS activation;

d.    Breakdowns in internal communication, resulting in delayed escalation and delayed life-saving intervention; and

e.    Failure to comply with evolving state requirements, including those reflected in House Bill 4623, which emphasize school emergency preparedness and staff training.

21.    Eren was a healthy child with no medical conditions that would have contributed to or complicated the choking event. His medical records reflect normal development, no history of respiratory disorders, and no limitations that would have interfered with his ability to survive a choking incident had proper intervention been provided.

22.    Following Eren's death, his mother, Juliana Rivera, was forced to arrange and pay for funeral, burial, and interment services, as reflected in the cemetery and funeral home records. She also received grief-counseling referrals from the school, acknowledging the severity of the

trauma inflicted upon her and her family.

23.    On July 2, 2025, Plaintiff timely submitted a Notice of Claim pursuant to the Texas Tort Claims Act, providing formal notice of the District's negligence, systemic failures, and statutory violations.

24.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered profound and ongoing emotional trauma, severe mental anguish, and the irreplaceable loss of her child's companionship, love, guidance, and support. The effects of witnessing the aftermath of her son's collapse and death have caused lasting psychological injury, requiring counseling and impairing her daily functioning.

### V.    CAUSES OF ACTION

### COUNT ONE – 42 U.S.C. § 1983
### FOURTEENTH AMENDMENT – STATE-CREATED DANGER

25.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

26.    Defendants, acting under color of state law, affirmatively created or increased the danger to Eren Rivera by initiating, organizing, and supervising a school-controlled food-related activity during which Eren was required to participate, despite the absence of adequately trained personnel capable of recognizing and responding to choking emergencies.

27.    Defendants exercised exclusive custody and control over Eren during the lunch period, restricted his ability to seek outside assistance, and placed him in a position of heightened vulnerability by failing to ensure that trained staff were present to monitor students during a known high-risk activity involving food consumption.

28.    Defendants further increased the danger to Eren by failing to intervene when he exhibited clear and escalating signs of respiratory distress, failing to administer the Heimlich maneuver or any other basic life-saving measures, and delaying activation of emergency medical

services during a critical window in which prompt intervention would have prevented his death.

29.    Defendants' actions and omissions were not mere negligence but constituted deliberate indifference to a known and obvious risk of serious harm. Defendants were aware, or reasonably should have been aware, that choking is a foreseeable and life-threatening hazard during school meal periods and that failure to respond promptly would place Eren at substantial risk of death.

30.    Defendants' conduct, including the failure to recognize a plainly observable medical emergency, the failure to take any life-saving action, and the delay in contacting EMS, shocks the conscience and represents a gross departure from accepted professional standards for the care and supervision of children in a school setting.

31.    As a direct and proximate result of Defendants' affirmative acts and deliberate indifference, Eren suffered prolonged airway obstruction, anoxic injury, cardiac arrest, and ultimately death. Plaintiff suffered the loss of her child's life, companionship, love, and support, along with severe emotional and psychological harm.

32.    Although the Fifth Circuit has not yet formally adopted the state-created danger doctrine, multiple circuits have recognized that a constitutional violation occurs where state actors affirmatively create or substantially increase a known and specific risk of harm to an identifiable individual. Plaintiff asserts this claim to preserve it for appellate review and to advance a non-frivolous argument for the extension or modification of existing law under Rule 11(b)(2). Even under current Fifth Circuit standards, Defendants' conduct constitutes affirmative acts that placed Eren in a more dangerous position than he would have otherwise faced, including requiring his participation in a school-controlled food-related activity without trained personnel present, restricting his ability to seek outside assistance, and delaying emergency intervention despite clear signs of respiratory distress. These allegations plausibly state a claim under the state-created

7

danger framework recognized by other circuits and present a legally cognizable theory for extension of constitutional protections in circumstances where state actors exercise exclusive control over a child's safety.

## COUNT TWO - 42 U.S.C. § 1983
## FOURTEENTH AMENDMENT – SPECIAL RELATIONSHIP

33.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

34.    At all relevant times, Eren Rivera was a seven-year-old minor attending Epps Island Elementary School pursuant to Texas's compulsory education laws. During the school day, including the lunch period in which the events occurred, Eren was under the exclusive custody, control, and supervision of Klein ISD personnel. As a young child in a compulsory attendance setting, Eren was not free to leave, seek outside assistance, or protect himself from danger.

35.    By assuming full custodial responsibility over Eren during school hours, Defendants owed him a heightened duty to ensure his safety, to monitor him appropriately, and to respond to medical emergencies in a manner consistent with accepted professional standards for the care of children.

36.    Defendants breached this duty by failing to protect Eren from a known, obvious, and life-threatening medical emergency, despite clear signs of respiratory distress and choking that required immediate intervention. Defendants' failure to recognize the emergency, failure to administer the Heimlich maneuver or other life-saving measures, and delay in activating emergency medical services constituted a violation of Eren's substantive due process rights under the Fourteenth Amendment.

37.    As a direct and proximate result of Defendants' actions and omissions while exercising custodial authority over Eren, he suffered prolonged airway obstruction, anoxic injury, cardiac arrest, and ultimately death. Plaintiff suffered the loss of her child's life, companionship,

love, and support, along with severe emotional and psychological harm.

38.     Plaintiff acknowledges that the Fifth Circuit has narrowly construed the special-relationship doctrine but asserts this claim to preserve it for appellate review and to advance a non-frivolous argument for the extension, clarification, or modification of existing law under Rule 11(b)(2). Unlike cases involving general school supervision, Eren was a seven-year-old minor in the compulsory custody and exclusive control of school officials during a structured, school-mandated activity in which he was not free to leave, seek outside assistance, or protect himself. The degree of control exercised by Defendants, combined with Eren's age, vulnerability, and inability to access alternative sources of aid, created a custodial environment functionally analogous to those in which courts have recognized a constitutional duty to ensure basic safety. These facts plausibly support a claim that Defendants owed Eren a heightened duty of care under the Fourteenth Amendment and that their failure to act in the face of a plainly observable medical emergency violated his substantive due process rights.

**COUNT THREE**
**MONELL LIABILITY**
**Failure to Train, Failure to Supervise, Unconstitutional Policies**

39.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

40.     At all relevant times, Defendant Klein Independent School District ("Klein ISD") maintained and enforced policies, customs, or practices that demonstrated deliberate indifference to the constitutional rights and safety of students, including Eren Rivera. These policies, customs, and practices included, but were not limited to, the following:

      a.   Failure to train teachers, aides, cafeteria staff, and administrators in the recognition of choking emergencies and the proper administration of the Heimlich maneuver, CPR, and other basic life-saving interventions, despite the well-known and

foreseeable risk of choking among elementary-age children during school meal periods.

b. Failure to implement, enforce, or disseminate adequate emergency medical response protocols, including procedures for immediate intervention, internal communication, and rapid activation of emergency medical services during life-threatening incidents.

c. Failure to supervise lunchroom activities and ensure that trained personnel were present and actively monitoring students during food-related activities, resulting in inadequate staff-to-student ratios and the absence of personnel capable of responding to medical emergencies.

d. Maintenance of customs or practices that caused or contributed to delays in EMS activation, including unclear chains of command, lack of staff preparedness, and systemic communication failures during emergencies.

e. Failure to adopt or enforce policies required by evolving state standards, including those reflected in House Bill 4623, relating to school emergency preparedness, staff training, and student safety.

41. These failures were not isolated or accidental but reflected longstanding, widespread, and well-known deficiencies within Klein ISD. The District was on notice that its training, supervision, and emergency response practices were inadequate and posed a substantial risk of serious harm to students, yet it failed to take reasonable steps to correct these deficiencies.

42. Klein ISD's policies, customs, and practices, and its deliberate indifference to the need for proper training, supervision, and emergency protocols, were the moving force behind the constitutional violations suffered by Eren Rivera. These systemic failures directly caused the delays in recognizing his choking emergency, the failure to administer life-saving measures, the

10

delayed activation of EMS, and ultimately, Eren's preventable death.

## COUNT IV – WRONGFUL DEATH
## TEXAS CIV. PRAC. & REM. CODE § 71.002

43.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

44.    At all relevant times, Defendants owed Eren Rivera a duty to exercise ordinary care in supervising him, monitoring his safety, and responding appropriately to medical emergencies that arose while he was in their custody during the school day.

45.    Defendants breached this duty by failing to recognize Eren's obvious signs of choking, failing to administer the Heimlich maneuver or any other life-saving intervention, failing to initiate CPR in a timely manner, and delaying activation of emergency medical services during a critical period in which prompt action would have prevented his death.

46.    Defendants' acts and omissions constituted negligence and gross negligence under Texas law. The risk of choking during school meal periods is well-known, foreseeable, and requires staff to be trained and prepared to respond immediately. Defendants' failure to take even the most basic steps to protect Eren from a life-threatening emergency directly and proximately caused his death.

47.    As a result of Defendants' negligence, Plaintiff has suffered damages recoverable under the Texas Wrongful Death Act, including but not limited to:

    a.    Mental anguish, past and future;

    b.    Loss of companionship, society, and affection of her minor child;

    c.    Loss of the love, comfort, and emotional support Eren would have provided; and

    d.    Pecuniary losses, including funeral, burial, and interment expenses, as well as the loss of the value of Eren's services and support.

48.    Defendants' negligence caused Eren's death, entitling Plaintiff to damages for

mental anguish, loss of companionship, and pecuniary loss.

## COUNT FIVE
## SURVIVAL ACTION § 71.021

49.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

50.     Pursuant to Texas Civil Practice & Remedies Code § 71.021, all causes of action that Eren Rivera could have brought had he survived, including claims for pain, suffering, mental anguish, and physical injury, survive to his Estate and may be prosecuted by Plaintiff as his duly appointed personal representative.

51.     Before his death, Eren experienced conscious pain, fear, and suffering as he struggled to breathe during the choking episode. Eren remained conscious for a period of time while exhibiting visible signs of panic, distress, and airway obstruction, during which he was aware of his inability to breathe and the life-threatening nature of his condition.

52.     During this period, Eren endured prolonged respiratory distress, escalating hypoxia, and the physical and emotional trauma associated with choking, loss of airflow, and the absence of timely life-saving intervention.

53.     As a direct and proximate result of Defendants' acts and omissions, Eren suffered significant pre-death injuries, including airway obstruction, anoxic brain injury, cardiac arrest, and the physical and emotional pain associated with these conditions.

54.     The Estate of Eren Rivera is entitled to recover all damages permitted under Texas law, including compensation for Eren's conscious pain and suffering, mental anguish, physical injury, and medical expenses incurred prior to his death.

## COUNT SIX
## NEGLIGENCE/ GROSS NEGLIGENCE

55.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far

12

above and incorporates the same as if fully set forth at length herein.

56.    At all relevant times, Defendants owed Eren Rivera a duty to exercise ordinary care in supervising him, monitoring his safety, and responding appropriately to medical emergencies that arose while he was in their custody during the school day. This duty included the obligation to recognize signs of choking, to administer appropriate first-aid measures such as the Heimlich maneuver, to initiate CPR when necessary, and to promptly activate emergency medical services.

57.    Defendants breached this duty in multiple respects, including but not limited to:

   a.    Failing to recognize Eren's clear and escalating signs of choking and respiratory distress;

   b.    Failing to administer the Heimlich maneuver or any other basic life-saving intervention;

   c.    Failing to initiate CPR in a timely manner;

   d.    Failing to promptly activate emergency medical services;

   e.    Failing to supervise students adequately during a food-related activity; and

   f.    Failing to ensure that trained personnel were present and capable of responding to foreseeable medical emergencies.

58.    Defendants' acts and omissions constituted negligence because they fell below the standard of care that a reasonably prudent school district and its employees would exercise under the same or similar circumstances.

59.    Defendants' conduct further constituted gross negligence because: a.

   a.    The risk of choking during elementary school meal periods is well-known, obvious, and foreseeable; b.

   b.    Defendants were subjectively aware of the extreme degree of risk posed by failing to train staff and failing to respond promptly to choking emergencies; and c.

c. Despite this awareness, Defendants proceeded with conscious indifference to the rights, safety, and welfare of Eren and other students.

60. As a direct and proximate result of Defendants' negligence and gross negligence, Eren suffered prolonged airway obstruction, anoxic injury, cardiac arrest, and death. Plaintiff suffered the loss of her child's life, companionship, love, and support, along with severe emotional and psychological harm, and incurred funeral and burial expenses.

**COUNT SEVEN**
**NEGLIGENT HIRING, TRAINING, AND SUPERVISION**

61. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

62. At all relevant times, Defendant Klein Independent School District owed a duty to exercise reasonable care in the hiring, training, supervision, and retention of its employees, including teachers, aides, cafeteria staff, and administrators responsible for supervising students and responding to medical emergencies during the school day.

63. Klein ISD breached this duty by failing to ensure that its employees were adequately trained in basic life-saving procedures, including the recognition of choking, the administration of the Heimlich maneuver, the initiation of CPR, and the prompt activation of emergency medical services. These procedures are fundamental, widely recognized, and essential for the protection of elementary-age children during school meal periods.

64. Klein ISD further breached its duty by failing to supervise and evaluate staff performance, failing to ensure that trained personnel were present in the cafeteria during food-related activities, and failing to enforce or implement emergency response protocols necessary to protect students from foreseeable harm.

65. The risk that a child might choke during lunch is well-known, obvious, and foreseeable, particularly in an elementary school setting. Klein ISD knew or should have known

14

that inadequate training and supervision created a substantial risk of serious injury or death to students, including Eren Rivera.

66.     Klein ISD's negligent hiring, training, and supervision of its employees was a direct and proximate cause of the failures that occurred on February 24, 2025, including the failure to recognize Eren's choking emergency, the failure to administer life-saving measures, and the delay in contacting EMS. These failures directly resulted in Eren's prolonged airway obstruction, anoxic injury, cardiac arrest, and death.

67.     As a result of Klein ISD's negligence, Plaintiff suffered the loss of her child's life, companionship, love, and support, along with severe emotional and psychological harm, and incurred funeral and burial expenses.

## VI.   DAMAGES

68.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages recoverable under federal law, Texas law, and the Texas Wrongful Death and Survival Statutes. These damages include, but are not limited to:

a.  Mental anguish, past and future, arising from the traumatic loss of her seven-year-old child, including grief, emotional distress, psychological injury, and the lasting effects of witnessing the aftermath of Eren's collapse and death.

b.  Loss of companionship and society, including the permanent deprivation of Eren's comfort, guidance, emotional support, and the shared milestones and familial relationship that would have continued throughout his life.

c.  Pecuniary losses, including funeral, burial, and interment expenses, as documented in the cemetery and funeral home records, as well as the loss of the value of Eren's services, support, and contributions he would have provided to his mother throughout his lifetime.

15

d.  Survival damages, including Eren's conscious pain, suffering, fear, and mental anguish prior to death, as well as compensation for the physical injuries he sustained during the choking episode, airway obstruction, anoxic injury, and cardiac arrest.

e.  Exemplary damages, to the extent permitted by law, based on Defendants' gross negligence, deliberate indifference, and conscience-shocking conduct in failing to protect Eren from a known and obvious life-threatening danger.

f.  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable federal statutes, as Plaintiff has been required to retain counsel to vindicate her constitutional rights and those of her deceased child.

## VII.    <u>JURY DEMAND</u>

69.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action. Plaintiff seeks to have a jury determine liability, damages, and all other matters properly submitted to a jury under federal and Texas law.

## VIII.    <u>PRAYER FOR RELIEF</u>

70.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, and award all forms of relief available under federal and Texas law, including compensatory damages, wrongful-death and survival damages, pecuniary losses, mental-anguish damages, loss of companionship and society, funeral and burial expenses, exemplary damages where permitted, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and any such other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

## <u>CERTIFICATION</u>

71.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: <u>June 03, 2026</u>

 */s/ Renee Walker*
Renee Walker, Esq.
Federal Bar No.: 3974276
 Phoenix Corporate Tower
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 602.960.9400
Fax: 707.215.3600
Renee.Walker@llgnational.com
*Attorney for Plaintiff*