**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JULIANA RIVERA, Individually and as Representative of the ESTATE of EREN RIVERA, Deceased,** | § | |
| ***Plaintiffs,*** | § | |
| **v.** | § | **C.A. No. 4:26-CV-04462** |
| **KLEIN INDEPENDENT SCHOOL DISTRICT et al.** | § | |
| ***Defendants.*** | § | |

**REPLY TO RESPONSE TO MOTION TO DISMISS ON BEHALF OF DEFENDANTS KLEIN INDEPENDENT SCHOOL DISTRICT AND DR. JENNY MCGOWN**

Defendants Klein Independent School District ("KISD" or "the District") and Dr. Jenny McGown file their Reply in support of their Motion to Dismiss.

**Introduction**

Plaintiff devotes most of her Response to the proposition that, in narrow circumstances, a municipality may be liable for a single incident arising from a complete failure to train. However, Plaintiff's argument ignores the fact that she has not pleaded an underlying constitutional violation in the first place. The single-incident exception is a method of establishing municipal deliberate indifference; it does not address the underlying constitutional right at issue. Binding Fifth Circuit precedent establishes that compulsory public-school attendance *does not* create a constitutional duty to protect students from harm. Plaintiff's own Response acknowledges as much, conceding that "a bare allegation that school employees failed to aid a choking student ordinarily does **not**, by itself, establish a Fourteenth Amendment violation[,]" that compulsory school attendance generally does not create *DeShaney* custody, and that "bodily integrity" does not provide an

independent vehicle for constitutionalizing every failure to provide medical assistance. Dkt. 12 at 8 (emphasis in original).

Unable to overcome those principles, Plaintiff attempts to rewrite her Complaint and now asserts that District employees prevented others from calling 911, interfered with third parties attempting to obtain assistance, falsely represented that help had been summoned, and that a final policymaker personally directed, approved, or ratified the decision not to render aid. Dkt. 12 at 6, 9. None of those facts appears in the Complaint. Indeed, Plaintiff's Response refers to this supposed official merely as "[final policymaker]"—an unfilled drafting placeholder that underscores the absence of any such allegation from the Complaint. Dkt. 12 at 5.

Plaintiff's claims must stand or fall on the allegations in her Complaint and *not* the materially different allegations described for the first time in her Response. The Complaint before the Court fails to allege an underlying constitutional violation and independently fails to plead the elements necessary to establish municipal liability. Plaintiff also fails to respond to Defendants' arguments concerning McGown, Epps Island Elementary School, or governmental immunity from her state law claims. Defendants' Motion should accordingly be granted.

## Argument and Authorities

### A. Plaintiff's *Monell* Argument Fails Because There Is No Underlying Constitutional Violation.

Plaintiff begins with municipal liability but fails to address the threshold issue of a constitutional violation. A municipality cannot be liable under *Monell* unless a constitutional violation occurred in the first instance. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012) (en banc). A failure-to-train theory does not supply the missing constitutional violation; it provides a potential basis for attributing an independently established constitutional violation to the municipality. That distinction disposes of Plaintiff's

principal reliance upon *Littell v. Houston Independent School District*, 894 F.3d 616 (5th Cir. 2018). *Littell* involved an alleged strip search of students that was "clearly unconstitutional." *Id*. at 622. The issue was therefore not whether the students possessed an underlying constitutional right, but whether HISD's alleged failure to provide employees any training concerning the Fourth Amendment could satisfy *Monell's* deliberate indifference requirement without a pattern of earlier unconstitutional searches. *Id*. at 623-26. The Fifth Circuit emphasized that the single-incident exception applies only in "very narrow circumstances" involving a failure to train employees concerning "a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id*. at 624-25 (citation omitted). Thus, *Littell* cannot assist Plaintiff unless she first identifies the "clear constitutional duty" concerning which KISD allegedly failed to train its employees. *Id*. Plaintiff is unable to do so.

Plaintiff alleges that District personnel inadequately responded to Eren's choking emergency. However tragic the alleged consequences, neither the Due Process Clause nor Section 1983 impose a general federal constitutional duty upon a public school to protect a student from harm or provide competent emergency medical assistance. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-97 (1989); *Doe ex rel. Magee*, 675 F.3d at 856-58. Indeed, Plaintiff ultimately acknowledges this dispositive problem. Under the heading "Important Doctrinal Qualification," she admits: "A bare allegation that school employees failed to aid a choking student ordinarily does **not**, by itself, establish a Fourteenth Amendment violation." Dkt. 12 at 8 (emphasis in original). Plaintiff further acknowledges that compulsory school attendance "generally does not create the type of custody recognized in *DeShaney*" and that bodily integrity "is not an independent vehicle for constitutionalizing every failure to provide medical aid." *Id*.

Those concessions are fatal to Plaintiff's constitutional claims. Plaintiff cannot use *Monell's* single-incident exception to transform an alleged failure to perform the Heimlich maneuver, timely administer CPR, or promptly summon EMS into the violation of a constitutional right that does not otherwise exist.

**B. *Littell* Does Not Create a Constitutional Duty to Train School Employees in Choking Response.**

Plaintiff repeatedly characterizes choking as an "obvious" or "recurring" risk and argues that the need for choking-response training should therefore have been apparent to KISD. Dkt. 12 at 2-4. But that confuses an obvious safety risk with an obvious risk of violating the Constitution. *City of Canton*, *Connick*, *Brown*, and *Littell* do not turn on whether additional training might foreseeably prevent physical injury, but rather whether the need for training concerning a constitutional obligation was so obvious that the failure to provide it made a constitutional violation highly predictable. *Littell* illustrates the distinction. School employees conduct student searches as part of their duties, and the Fourth Amendment directly regulates how those searches may constitutionally be conducted. *Littell*, 894 F.3d at 625-26. Thus, completely failing to train employees concerning the Fourth Amendment could predictably cause those employees to violate the Fourth Amendment.

Here, there is no analogous constitutional rule governing the Heimlich maneuver, CPR, cafeteria staffing, or the timing of a 911 call. Plaintiff may contend that prudent school administration requires such training and that Texas law, professional standards, or common sense requires it. But Section 1983 does not federalize every allegedly inadequate safety practice by a public school. The Fifth Circuit has cautioned against precisely this sort of hindsight reasoning because virtually every injury permits a plaintiff to identify additional training that *might have* prevented it. *See Littell*, 894 F.3d at 625; *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989).

Plaintiff's theory would effectively impose constitutional liability whenever a municipality failed to train employees concerning a foreseeable physical danger. Neither *Littell* nor *Canton* supports that result.

**C. Plaintiff Improperly Attempts to Amend Her Complaint Through Her Response.**

Plaintiff's Response repeatedly represents that the Complaint contains factual allegations that it, in fact, does not. A Rule 12(b)(6) motion tests the sufficiency of the complaint actually filed. Plaintiff cannot avoid dismissal by supplying new facts in a response brief. Plaintiff's improper attempt to interject facts not plead should be rejected.

1. <u>Paragraph 40 does not allege that employees prevented anyone from calling 911 or otherwise interfered with emergency assistance.</u>

Plaintiff's Response states: "It [paragraph 40 of the Complaint] further alleges that employees prevented others from calling 911 due to mistakes and miscommunication, delayed emergency responders, affirmatively represented that help had been summoned, or placed the child in a more dangerous position. *Id*. ¶¶ 40." Dkt. 12 at 6. But paragraph 40 of the Complaint alleges no such facts. Paragraph 40 actually alleges five generalized supposed District policies or practices:

a. Failure to train teachers, aides, cafeteria staff, and administrators in recognizing choking emergencies and administering the Heimlich maneuver, CPR, and other interventions;

b. Failure to implement, enforce, or disseminate adequate emergency medical response protocols;

c. Failure to supervise lunchroom activities and ensure trained personnel were present;

d. Maintenance of customs or practices that caused or contributed to delays in EMS activation, including unclear chains of command, lack of staff preparedness, and systemic communication failures; and

e. Failure to adopt or enforce policies supposedly required by evolving state standards, including House Bill 4623.

Dkt. 1 ¶ 40. There is no allegation in paragraph 40, or elsewhere in the Complaint, that any employee prevented another person from calling 911, represented that emergency assistance had already been summoned, or affirmatively interfered with anyone attempting to provide assistance. The Court should ignore Plaintiff's misrepresentations.

2. Paragraphs 40 and 41 do not identify the Board of Trustees or any other final policymaker.

Plaintiff similarly misrepresents: "The Complaint alleges that the District's Board of Trustees possessed final authority over District-wide policies governing employee training, student safety, and emergency response. ECF No. 1 ¶¶ 40-41." Dkt. 12 at 5. That representation is demonstrably incorrect. Neither paragraph 40 nor paragraph 41 mentions KISD's Board of Trustees. Indeed, the Complaint does not identify the Board as the relevant policymaker at all. The Response cannot supply those missing allegations after the fact.

3. Paragraph 41 does not allege that a policymaker personally directed, approved, or ratified the failure to provide aid.

Plaintiff's next misrepresentation is the following: "Alternatively, the Complaint alleges that [final policymaker] personally directed, approved, or knowingly ratified the decision not to render or summon aid despite knowledge of Eren Rivera's condition. ECF No. 1 ¶¶ 41." Dkt. 12 at 5 (brackets in original). The unfinished "[final policymaker]" placeholder is revealing. Plaintiff cannot name the alleged policymaker because the Complaint does not contain the allegation she attributes to it. Paragraph 41 says nothing about any policymaker personally directing anything. It does not allege that a policymaker knew Eren was choking, knew employees had failed to provide aid, directed employees not to provide aid, approved a decision not to summon EMS, or ratified anyone's conduct afterward. Plaintiff's Response thus attempts to convert a generalized allegation that "the District was on notice" of unspecified deficiencies into an entirely new allegation that a

final policymaker personally participated in or ratified the incident itself. Those are fundamentally different theories.

4. The Response cannot cure these deficiencies.

These newly asserted allegations matter because they purport to supply facts Plaintiff's Response concedes are necessary to avoid dismissal. On pages 8-9, Plaintiff acknowledges that her Section 1983 theory requires facts showing such things as: "affirmative conduct by employees that created or increased the danger"; "restraint, isolation, or interference preventing the child or third parties from obtaining aid"; "a decision by a final District policymaker"; "no training at all on an obvious constitutional obligation"; or "another independently established constitutional violation." Dkt. 12 at 9. That portion of the Response effectively identifies the deficiencies in Plaintiff's own Complaint. The Complaint does not allege those facts. Plaintiff therefore attempts to supply them elsewhere in her Response and then attributes them to paragraphs that do not contain them. A plaintiff cannot amend a complaint through a response to a motion to dismiss. The Court should disregard the newly asserted allegations and dismiss Plaintiff's claims based on the facts (or lack thereof) that she *did* plead.

**D. Plaintiff's State-Created-Danger Theory Remains Legally Unavailable and Factually Deficient.**

Plaintiff's Response fares no better concerning state-created danger. As Defendants explained, the panel in *Sterling v. City of Jackson* purported to adopt the doctrine, but the Fifth Circuit subsequently granted rehearing en banc and vacated that opinion. The vacated panel opinion therefore has no precedential force. *See Sterling v. City of Jackson*, 167 F.4th 806 (5th Cir. 2026) (mem.). Current Fifth Circuit precedent does not recognize state-created danger as a viable theory of liability. More fundamentally, even the now-vacated *Sterling* formulation would not save this Complaint. It required an affirmative act by the state creating or enhancing a danger to the

plaintiff and conduct that shocks the conscience. *Sterling v. City of Jackson*, 159 F.4th 361, 387 (5th Cir. 2025), *vacated*, 167 F.4th 806 (5th Cir. 2026).

Here, the Complaint alleges omissions: failure to recognize choking, failure to administer the Heimlich maneuver, failure to timely initiate CPR, failure to timely activate EMS, inadequate training, inadequate supervision, and inadequate protocols. Dkt. 1 ¶¶ 15-20, 26-30. Recharacterizing those omissions as "affirmative" conduct does not make them so. Nor does requiring a seven-year-old child to eat lunch at school constitute the affirmative creation of danger. The choking hazard arose from eating food and not from governmental conduct creating a danger that otherwise did not exist. Accepting Plaintiff's theory would mean that public schools "create" virtually every danger encountered by a student during the school day merely because the school requires attendance and supervises the activity during which an injury occurs. That proposition cannot be reconciled with *DeShaney* or the Fifth Circuit's public-school cases.

**E. Plaintiff's Special-Relationship Theory Is Foreclosed by Binding En Banc Authority.**

Plaintiff likewise cannot avoid *Doe ex rel. Magee*, which reaffirmed "decades of binding precedent" that "a public school does not have a special relationship with its students requiring the school to ensure the students' safety from private actors." 675 F.3d at 857. Plaintiff attempts to distinguish Eren's circumstances based upon his young age, compulsory attendance, and the District's control during the lunch period. Dkt. 12 at 6-7. But those are not meaningful distinctions from the binding public-school precedent. The Fifth Circuit has already rejected the proposition that compulsory school attendance creates the type of involuntary custody contemplated by *DeShaney*. *Doe ex rel. Magee*, 675 F.3d at 857-58.

**F. Plaintiff's Newly Asserted "Bodily Integrity" Theory Does Not Save Her Claims.**

Plaintiff additionally attempts to characterize the alleged failure to provide emergency assistance as an infringement of Eren's substantive due process right to "bodily integrity and personal security." Dkt. 12 at 7. That theory merely relabels the same alleged omissions. Plaintiff herself recognizes the problem, conceding that "'[b]odily integrity' also is not an independent vehicle for constitutionalizing every failure to provide medical aid." Dkt. 12 at 8. Yet that is precisely what her theory would accomplish. The Complaint does not allege that District employees physically invaded Eren's body, subjected him to unwanted medical treatment, or otherwise committed the type of affirmative governmental intrusion traditionally addressed by bodily integrity jurisprudence. It alleges that employees failed to provide adequate assistance during a medical emergency. However serious the alleged consequences of those failures, the Due Process Clause does not transform them into a substantive-due-process violation.

**G. Plaintiff Does Not Respond to Defendants' Independent Grounds for Dismissing McGown, Epps Island Elementary School, or the State Law Claims.**

Finally, Plaintiff's Response is notable for what it does not address. Defendants moved to dismiss all claims against McGown because she is sued only in her official capacity and those claims are duplicative of the claims against KISD. Dkt. 11 at 5. Plaintiff offers no response. Defendants moved to dismiss Epps Island Elementary School because an individual school campus is not a separate juridical entity capable of being sued. Dkt. 11 at 5-6. Plaintiff offers no response. Defendants moved to dismiss Plaintiff's wrongful-death, survival, and state law tort claims because none arises from the negligent use or operation of a motor vehicle or motor-driven equipment. Dkt. 11 at 11-12. Plaintiff does not address these arguments.

**Prayer**

Defendants KISD and Dr. Jenny McGown request that the Court grant their Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss and dismiss all of Plaintiff's claims against them with prejudice.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ Paul A. Lamp
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: 713-993-7060
Facsimile: 888-726-8374

ATTORNEY FOR DEFENDANTS KLEIN INDEPENDENT SCHOOL DISTRICT AND DR. JENNY MCGOWN

**CERTIFICATE OF SERVICE**

I certify that on the 24th day of August 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Renee Walker, Esq.
Phoenix Corporate Tower
3003 N Central Avenue, Suite 685
Phoenix, AZ 85012
*Via* CM/ECF

/s/ Paul A. Lamp
ATTORNEY FOR DEFENDANTS KLEIN INDEPENDENT SCHOOL DISTRICT AND DR. JENNY MCGOWN